UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| **OLD ORCHARD PROVISIONS, LLC,** | : |
| **Plaintiff,** | : |
| v. | : |
| | Civil Action No. |
| **TOWN OF OLD ORCHARD BEACH, MAINE,** | : |
| | **INJUNCTIVE RELIEF SOUGHT** |
| | : |
| **Defendant.** | |
| | : |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Old Orchard Provisions, LLC ("OOP") files this Complaint for Declaratory and Injunctive Relief against the Town of Old Orchard Beach, as follows:

**SUMMARY OF CLAIM**

1. The Town of Old Orchard Beach (the "Town") began the process of adopting a zoning and licensing ordinance for adult use marijuana businesses in the spring of 2021. Following more than six months of meetings, which included extensive opportunities for input from stakeholders, the Town Council adopted Town Ordinance Section 78.1279, outlining the performance standards governing adult-use marijuana businesses, and Sections 18.604-622, providing a process for issuing licenses to adult use marijuana businesses (collectively, the "Ordinance"). Section 78.1279 set forth policy-driven performance standards that aligned with standards imposed on other uses and reflected land use concerns raised by the public, stakeholders, and members of the Town Planning Board. Section 18.608 limited the number of licenses that would be issued to operate an adult use marijuana store to one and, as later amended in January 2023, provided a list of merit-based criteria and a process for awarding points for these criteria for purposes of awarding the one license. The Ordinance as adopted and amended did not restrict the

23001494.v1

building size of a proposed adult use marijuana store, but it did include merit-based criteria awarding points to any applicant for an adult use retail store, whose proposed store had a sales floor of less than 2,000 square feet (1 point) and less than 1,500 square feet (2 points).

2. In relevant part, two businesses applied for the license to operate an adult use marijuana store: OOP and Beach Boys Cannabis Company ("Beach Boys"). OOP is a Maine LLC with three members: Andrew Keeley ("Andrew"), Sean Bastin ("Sean"), and John Hunt ("John"). Sean is originally from Pennsylvania, and John is a resident of Colorado. Andrew is from Maine. OOP submitted an application to operate an adult use marijuana store in an approximately 3,800-square-foot building. Beach Boys in turn is a Maine corporation owned by Old Orchard Beach residents Thomas Mourmouras ("Tom"), Patrick Mourmouras ("Pat"), and Gabe Warren ("Gabe"). Beach Boys submitted an application to operate an adult use marijuana store in an approximately 800-square-foot building.

3. Beginning in or about October 2022, on information and belief, Tom and Pat and others associated with Beach Boys organized what ultimately became a referendum to amend the Ordinance to limit the lot size of any proposed adult use marijuana store to equal to or less than 21,780 square feet, and to limit the building size of any proposed adult use marijuana store to equal to or less than 1,000 square feet. The only property that can satisfy the Ordinance and proposed Ordinance Amendment is the property leased by Beach Boys. On June 13, 2023, the proposed amendment was adopted during a special election (the "Ordinance Amendment").

4. The stated purpose of the proposed Ordinance Amendment was to limit any adult use marijuana store license to a locally-owned business and prevent a purportedly out-of-state-owned business from obtaining the license. Thus, the purpose of the Ordinance Amendment was to discriminate against non-residents such as OOP and to exclude them from the economic

23001494.v1

opportunities available to adult use marijuana stores in Maine. The Ordinance Amendment harms both non-residents and Maine adult use marijuana stores by arbitrarily limiting the universe of potential investors in Old Orchard Beach and by eliminating any competition for the only adult use marijuana store license in Old Orchard Beach.

5. The Ordinance Amendment should be struck down because it violates the dormant Commerce Clause of the United States Constitution by implicitly and intentionally favoring Maine residents over non-residents. Additionally, the Ordinance Amendment violates the Due Process Clause of the Fourteenth Amendment because it is unreasonable, arbitrary, and capricious, and bears no rational basis to any legitimate public purpose.

## PARTIES AND JURISDICTION

6. Plaintiff Old Orchard Provisions, LLC is a Maine limited liability company owned in part by a resident of a state other than Maine.

7. The Town of Old Orchard Beach is a town located in York County, Maine.

8. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 since OOP has asked it to rule that the Ordinance Amendment violates the United States Constitution.

## FACTS GIVING RISE TO COMPLAINT

9. OOP realleges the preceding paragraphs as if fully set forth herein.

10. On November 16, 2021, the Town adopted the Ordinance, which provides for and regulates the issuance of local licenses for adult use marijuana business. In pertinent part, Section 18.608 of the Ordinance limits the number of licenses that would be issued to operate an adult use marijuana stores to one. The Ordinance as adopted by the Town Council did not restrict the building size of a proposed adult use marijuana store.

23001494.v1

11. In or around October 2022, the Town Council began discussing its proposed amendments to the Ordinance. These proposed amendments included a new license application procedure with a matrix of merit criteria that the Town would consider in determining to whom to grant the license, including awarding points to any applicant for an adult use retail store, whose proposed store had a sales floor of less than 2,000 square feet (1 point) and less than 1,500 square feet (2 points). This criteria would award points to applicants with a smaller proposed sales floor.

12. Also in or around October 2022, Tom and Pat and others associated with Beach Boys circulated a petition to amend the Ordinance (the "Petition"). Specifically, the Petition asked for signatures in support of "an amendment to the Performance Standards for Adult Use Marijuana Business to discourage mega/big box retail stores. The Amendment limits the parcel and structure size for Adult Use Marijuana Businesses to 21,780 sq. ft. (1/2 acre) and 1,000 sq. ft., respectively."

13. Merriam Webster defines "big-box" as "of, relating to, or being a large chain store having a boxlike structure." In the example sentences listed on http://www.merriam-webster.com/dictionary/big-box for "big-box," Bed Bath & Beyond, Target, Walmart, and Sears Roebuck are listed as examples of big-box stores, as compared to "small and medium-sized businesses lower in the pecking order than big-box chains." The terms "big-box store" or "megastore" do not appear to accurately apply to a store that would be housed in a building that is 3,800 square feet.

14. While the Petition was being circulated, Tom and Pat and others associated with Beach Boys (the "Petitioners") made repeated public comments that demonstrated that the purpose of the Petition and proposed Ordinance Amendment was both to ensure that the performance criteria were so narrowly drafted that only property leased by Beach Boys would meet the zoning

4

23001494.v1

requirement for an adult use marijuana retail store and to exclude OOP, which the Petitioners consistently referred to as an "out of state owned" business.

15. The Petition obtained sufficient signatures of registered voters in the Town. The Town Council therefore had the choice to enact the proposed Ordinance Amendment through the regular Council ordinance amendment process or to send to a referendum vote.

16. On November 28, 2022, the Town Planning Department sent a memorandum to the Town Council regarding the Petition and the proposed Ordinance Amendment. The Planning Board raised several concerns regarding the proposed Ordinance Amendment, including that the standards "could eliminate all competition and leave the petitioner as the only one who qualifies for an adult use marijuana store license. If one interpretation of the petition amendments is correct, one building on one lot is the only location a store could be placed. . . . It's my understanding those who represent the petition have an interest (e.g., lease) in this building. This removes competition and does not seem fair."

17. The Planning Board recommended that the Council not approve the proposed Ordinance Amendment for five reasons, including that the language of the proposed Ordinance Amendment was not clear and would be difficult to administer fairly and that it could be interpreted to allow Petitioners' building to be the only allowed location for the adult use marijuana store.

18. On December 6, 2022, the Town Council held a public hearing on whether to adopt the proposed Ordinance Amendment or to order a special election for the purpose of submitting the question to a referendum vote. The Council voted 4-0 not to adopt the proposed Ordinance Amendment and to order a special Town election on June 13, 2023 to submit the proposed Ordinance Amendment to a vote (the "Special Election"). Some of the reasons given by the Town Councilors was that those who were sending around the Petition had a vested interest in the

23001494.v1

outcome, that the proposed Ordinance Amendment limited the license to a single property in Town, that there was no legitimate policy reason for restricting the lot size that a marijuana retail store could be located on, and that there were questions regarding the enforcement of the proposed Ordinance Amendment due to vagueness of the language.

19. The Town Council adopted its proposed amendments to the Ordinance on January 13, 2023, and allowed for applications to be submitted March 6 and March 10, 2023 pursuant to the amended Ordinance.

20. The Petitioners objected to the Town issuing a license pursuant to the amended Ordinance until the Town's residents could vote on the proposed Ordinance Amendment in the Special Election, and filed an action in York Superior Court to enjoin the Town from issuing the license before the Special Election. Pat and Tom Mourmouras claimed that "it is certain" that they and Beach Boys would be excluded from the adult-use market in the Town if the January 13 amendments to the Ordinance were allowed to stand and the license was issued before the Special Election.

21. While that legal challenge was pending, OOP and Beach Boys both submitted applications for a license to operate an adult use marijuana business in Old Orchard Beach. OOP's application proposed a store in a building that was approximately 3,800 square feet (though the proposed store itself would not use the full square-footage). Beach Boys' application proposed a store in a building that was approximately 800 square feet.

22. Ultimately, the Petitioners obtained an injunction preventing the Town from awarding any adult use marijuana business licenses until the election could take place.

23. Upon information and belief, in the months leading up to the Special Election, Tom and Pat created "Yes on 1," an organization established to campaign in favor of the proposed Ordinance Amendment in the lead up to the Special Election.

24. On May 16, 2023, upon information and belief, Tom and Pat created a Facebook page for "Yes on 1" called "Yes on 1 – Restrict Marijuana Megastores in OOB" (the "'Yes on 1' Facebook page"). The "bio" section of the "Yes on 1" Facebook page states: "We Do Not Need Any Big, Out-of-State Owned Megastores in Town!"

25. On or about June 1, 2023, Pat left a comment on the "Yes on 1" Facebook page stating: "the town council restricted [the license] to only one store. All this vote does is let's [sic] the citizens choose between small and local, or grand and out of state owned by a criminal." The last part of this comment is referring to repeated false claims made by Tom and Pat that Sean Bastin, one of the members of OOP, was "criminal." Sean has never been convicted of a felony, however, and he does not have a criminal record in Maine.

26. That same day, Pat responded to a comment on the "Yes on 1" Facebook page that asked how to vote for competition, stating "the counsel only allowed one [license] because they didn't think anyone would find a spot. The result is that an out of state criminal found a massive spot."

27. On June 5, 2023, the "Yes on 1" Facebook page posted a video of Tom discussing the upcoming Special Election on the proposed Ordinance Amendment. In the video, Tom states, "I am a third-generation resident of Old Orchard Beach." He goes on to explain that "the other two owners of Beach Boys, Patrick Mourmouras and Gabe Warren, have both lived and worked here in Old Orchard Beach. Our business currently has five graduates of OOB High School as part of its management team. We are as local as it gets." Tom concludes the video by stating,

"The vote on Tuesday, June 13th will decide if the Town should have an 800-square-feet boutique run by locals or a 4,000-square-feet megastore across the street from Dunkin Donuts run by a company with a majority of out-of-state ownership. It's as simple as that. If you want to support local, vote yes on 1."

28. On or about June 12, 2023, the "Yes on 1" Facebook page posted: "John Hunt (Colorado Resident) – 30% Owner of [OOP]. This owner has no connection to Old Orchard Beach and was only added so that the other applicant could score more points than the locals." This post included a picture of John's Colorado driver's license.

29. The Special Election was held on June 13, 2023, and the question of whether to amend the Ordinance passed by a vote of 805 to 354.

30. The Ordinance Amendment will have the effect of only allowing Beach Boys to qualify for an adult use marijuana store license, and will prevent any other businesses from qualifying for a license, including OOP. In the absence of a preliminary injunction, OOP will be without recourse to obtain a license even though the Ordinance Amendment is unconstitutional and directly targets OOP.

## COUNT I – Violation of Federal Constitutional Rights
### U.S. Const. Art. I, § 8, Cl. 3; U.S. Const. Amend. XIV; 42 U.S.C. § 1983

31. OOP realleges the preceding paragraphs as if fully set forth herein.

32. The U.S. Constitution prohibits state and local laws that discriminate against citizens of other states. "[D]iscrimination simply means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter. If a restriction on commerce is discriminatory, it is virtually *per se* invalid." *Oregon Waste Sys., Inc. v. Dep't of Envtl. Quality of State of Or.*, 511 U.S. 93, 99 (1994); *see also Tennessee Wine & Spiritus Retailers Ass'n v. Thomas*, 139 S.Ct. 2449, 2461 (2019) ("[I]f a state law discriminates against out-of-state

goods or nonresident actors, the law can be sustained only on a showing that it is narrowly tailored to advance a legitimate local purpose." (alterations and quotation marks omitted)); *NPG, LLC v. City of Portland, Maine*, Docket No. 2:20-cv-00208-NT, 202 WL 4741913, *8 (D. Me. Aug. 14, 2020) ("[A] state law that discriminates on its face against interstate commerce, whether in purpose or effect, demands heightened scrutiny." (internal quotation marks omitted)).

33. A local law that discriminates against interstate commerce or nonresident actors on its face "invokes the strictest scrutiny of any purported legitimate local purpose and of the absence of nondiscriminatory alternatives." *Hughes v. Oklahoma*, 441 U.S. 322, 337 (1979); *see also Camps Newfound/Owatonna, Inc. v. Town of Harrison, Me.*, 520 U.S. 564, 581 (1997) (explaining that strict scrutiny of a law that facially discriminates against non-residents "is an extremely difficult burden, so heavy that facial discrimination by itself may be a facial defect" (quotation marks omitted)).

34. The purpose of the Ordinance Amendment, as stated repeatedly and publicly by the Petitioners, was to discriminate against non-residents and the Ordinance Amendment in effect discriminates against non-residents.

35. OOP is harmed by the Ordinance Amendment because the lot size restriction implicitly targets non-residents and prefers residents, wholly prevents OOP from obtaining a retail license, and limits OOP's economic opportunities in the Town's marijuana market.

36. The Ordinance Amendment does not have a legitimate local purpose. The Petitioners have been explicit that the purpose of the size limitation is to benefit local businesses over out-of-state owned businesses.

37. Additionally, "it is established that the requirements of due process exact that the law shall not be unreasonable, arbitrary, or capricious and that the state's police power can be

9

properly exercised only where there is a reasonable relationship to the public health, safety, morals, or welfare." *Inhabitants of Town of Boothbay v. Nat'l Advertising Co.*, 347 A.2d 419, 422 (Me. 1975); *see also Nebbia v. People of New York*, 291 U.S. 502, 510-11 (1934) ("And the guaranty of due process, as has often been held, demands only that the law shall not be unreasonable, arbitrary, or capricious, and that the means selected shall have a real and substantial relation to the object sought to be attained."). "The ultimate test of reasonableness is whether the regulatory means adopted by a municipality bear any rational basis to the evil to be corrected." *Boothbay*, 347 A.2d at 422-23.

38. The Ordinance Amendment bears no rational basis to any legitimate public purpose. Instead, the Ordinance Amendment appears to harm the public by unreasonably limiting competition, favoring Maine citizens over citizens of other states, and creating a scheme under which only a single building on a single location in the Town would be the only allowed location for the adult use marijuana store.

39. The Ordinance Amendment is therefore unreasonable, arbitrary, and capricious and violates the Due Process Clause of the Fourteenth Amendment.

40. Injunctive and declaratory relief are necessary to resolve this dispute between the Town and OOP, who have adverse legal interests, because the Ordinance Amendment violates the United States Constitution and subjects OOP to serious, concrete, and irreparable injuries.

41. Because this is an action to enforce OOP's constitutional rights brought pursuant to 42 U.S.C. § 1983, OOP should receive its reasonable attorneys' fees incurred in prosecuting this action. *See* 42 U.S.C. § 1988.

**COUNT II – Illegal Spot Zoning**
**28 U.S.C. § 1367**

42. OOP realleges the preceding paragraphs as if fully set forth herein.

43. Under Maine law, illegal spot zoning is the "process of singling out a small parcel of land for a use of classification totally different from that of the surrounding area, for the benefit of the owner of such property and to the detriment of other owners." *City of Old Town v. Dimoulas*, 803 A.2d 1018, 1024 (Me. 2002). "In order to constitute illegal spot zoning, the ordinance (1) must pertain to a single parcel or a limited area—ordinarily for the benefit of a particular property owner or specially interested party—and (2) must be inconsistent with the city's comprehensive plan, or if there is none, with the character and zoning of the surrounding area, or the purposes of the zoning regulation, *i.e.*, the public health, safety, and general welfare." *Id.* (internal quotation marks and citation omitted).

44. The Ordinance Amendment limits the license for an adult-use retail store to a single parcel, and the Ordinance Amendment was drafted for the benefit of the Petitioners, who plan to operate an adult-use retail store on that single parcel.

45. The Town's Comprehensive Plan, adopted in 1993, sets forth goals and policies for the general growth and development of the Town, including commercial growth and development. The Comprehensive Plan discusses two commercial and business districts: B-1 General Business District (which is now known as General Business 2 (GB-2)), and B-2 Highway Business District (which is now known as General Business 1 (GB-1)). These districts were meant to allow for a variety of retail, business, service, and residential uses, and the principal difference between them was the minimum lot size. The B-2 District was intended for business uses which require larger areas than are available in B-1 and where exposure to the passing motorist is an asset in attracting patrons. To that end, the minimum lot size for residential uses was set at 10,000 initially for both districts, but the minimum lot size for nonresidential uses in the B-1 District was 4,000 square feet, while the minimum lot size in the B-2 District was 20,000 square feet. The lot size minimum for

the GB-1 district is 10,000 square feet for residential uses and 20,000 square feet for nonresidential uses, just like the original minimum restrictions for B-2. *See* Town Ord. § 78.805. The minimum lot size in the GB-2 District is now 5,000 square feet for both residential and nonresidential uses. *See* Town Ord. § 78.835.

46. The Comprehensive Plan purposefully established larger minimum lot requirements for the B-2 District, now the GB-1 District, because that District was intended for business uses that require larger areas. The Comprehensive Plan did not establish any maximum lot sizes for either business district.

47. The Town's zoning ordinances permit adult use marijuana stores only in the GB-1 district. *See* Town Ord. § 78.803 (allowing adult use marijuana stores in GB-1 District); *but see* Town Ord. § 78.833 (not allowing adult use marijuana stores in GB-2 District).

48. The Ordinance Amendment sets a maximum lot size for an adult use marijuana store to 21,780 square feet, which means that the lot size for an adult use marijuana store would have to be at least 20,000 square feet but not more than 21,780 square feet.

49. The establishment of a maximum lot size of 21,780 square feet for adult use marijuana stores is inconsistent with the Town's Comprehensive Plan and therefore amounts to illegal spot zoning under Maine law.

**COUNT III – Declaratory Judgment Act**
**U.S. Const. Art. I, § 8, Cl. 3; U.S. Const. Amend. XIV; 28 U.S.C. § 1367; 28 U.S.C. § 2201**

50. OOP realleges the preceding paragraphs as if fully set forth herein.

51. OOP has taken the position that the Ordinance Amendment violates the dormant Commerce Clause and the Due Process Clause of the Fourteenth Amendment of the United States Constitution and is thus unenforceable.

52. OOP has also taken the position that the Ordinance Amendment amounts to illegal spot zoning under Maine law.

53. The Ordinance Amendment directly harms OOP.

54. The Town has taken the position that the Ordinance Amendment is valid and enforceable, and the Town intends to follow the Ordinance Amendment to begin allocating the sole retail license.

55. An actual controversy exists between OOP and the Town as to whether the Town may enforce the requirements of the Ordinance Amendment to allocate the retail license.

56. Declaratory and injunctive relief are necessary to resolve this dispute.

57. Under 28 U.S.C. § 2201 the Court has the power to declare the rights of the parties.

**WHEREFORE**, OOP respectfully requests that this Court enter judgment:

A. Declaring that the Ordinance Amendment violates the United States Constitution;

B. Declaring that the Ordinance Amendment is illegal spot zoning under Maine law;

C. Preliminarily and permanently enjoining the Town from awarding retail marijuana licenses based on the Ordinance Amendment;

D. Awarding attorneys' fees and costs to OOP; and

E. Granting such other and further relief as the Court deems just and proper.

Filed: July 13, 2023

Respectfully submitted,

/s/ Hannah E. King
Hannah E. King, ME Bar No. 4725
Dentons Bingham Greenebaum LLP
One City Center, Suite 11100
Portland, ME 04101
Phone: (207) 835-4354
Email: hannah.king@dentons.com
*Counsel for Plaintiff Old Orchard Provisions, LLC*

23001494.v1

/s/ Kristin E. McCall
Kristin E. McCall, KY Bar No. 97289
(*pro hac vice to be filed*)
Dentons Bingham Greenebaum LLP
3500 PNC Tower, 101 S. Fifth Street
Louisville, KY 40202
Phone: (502) 589-4200
Email: kristin.mccall@dentons.com
*Counsel for Plaintiff Old Orchard Provisions, LLC*